# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 8:07CR186 |
| Plaintiff, | ) | |
| | ) | MEMORANDUM |
| vs. | ) | AND ORDER |
| | ) | |
| ANTHONY H. GRIFFIN, | ) | |
| Defendant. | ) | |

This matter is before the Court on the Defendant's Appeal (Filing No. 21) of the Magistrate Judge's order denying the Defendant's motion to reconsider (Filing No. 20) the previous detention order. The Defendant also submitted a supporting brief. (Filing No. 22.)

## FACTUAL BACKGROUND

On May 23, 2007, the Defendant, Anthony H. Griffin ("Griffin"), was charged in an Indictment with being in possession of an unregistered firearm on or about January 2, 2006, in violation of 26 U.S.C. §§ 5841, 5861(d) and 5871. (Filing No. 1.) The government moved for detention, and an evidentiary hearing was held before Magistrate Judge F. A. Gossett on August 1, 2007.

*Pretrial Services Report*

The following information was obtained from the pretrial services report. Griffin has lived in Omaha since 1999 and resided since approximately March of 2005 with his wife, their child, and one of his wife's children from a previous marriage. At the time of the pretrial services report, Griffin had just completed a short-term apprentice/journeyman's job that lasted five months. The job ended, and he was then working about ten hours per

week. Griffin's hope was that he would be called back to work after being laid off by a previous employer. Due to his financial difficulties, in October of 2006, Griffin and his wife filed a Chapter 13 bankruptcy proceeding.

In April of 2006, Griffin was diagnosed as bipolar. He took his prescribed medication for one month and then, of his own accord, stopped the medication. Griffin began his alcohol use at age 14. He drank heavily for a period prior to a six-month term of incarceration that began in August of 2006. Griffin stated that since then he has been alcohol free. He has a history of using marijuana and cocaine, which he said he stopped using in 1999. In 1999, Griffin completed a thirty-day residential treatment program to treat his drug and alcohol issues. In 2006, he completed a "Life Learning Program" in the Douglas County jail.

Griffin's criminal history began in 1984 and continued steadily through May of 2007. His criminal history includes five felonies and reflects the following charges and convictions: criminal damage to property; battery; burglary; theft; assault; drug possession; domestic assault; violation of a protection order; and terroristic threats (related to the instant charge).

### *Evidentiary Hearing*

On August 1, 2007, a hearing was held on the government's motion for detention. Kendra Griffin, the Defendant's wife, testified that she married the Defendant in 1999. She called police six times since 2003, and each occasion resulted in the Defendant's arrest for domestic violence or violation of a protection order sought by her. (Tr. 4-5.) She stated that each of those situations followed the Defendants's use of alcohol and/or crack cocaine and that none involved physical violence. (Tr. 5.) Ms. Griffin testified that she

2

accompanied the Defendant to outpatient treatment at Immanuel Hospital for two months until insurance "ran out," and then the two attended counseling with their church pastor. (Tr. 6, 17.)  Ms. Griffin testified that the couple has been in counseling throughout their marriage. (Tr. 17.)  She stated that counseling had a positive effect on the Defendant. (Tr. 6.)  However, she admitted that the May 6, 2007, incident involved her husband's alcohol use and occurred after the Defendant had been in counseling both at Immanuel Hospital and with their pastor. (Tr. 7.)

Ms. Griffin testified that she operates a daycare center in her home.  She cares for six children. (Tr. 7, 13.)  She is willing to relocate the daycare if necessary to secure the Defendant's release.  (Tr. 7.)  She testified that she could not remember events surrounding a call she placed to police in May of 2003 that resulted in a charge of third-degree domestic assault that was later dismissed. (Tr. 8.)  Ms. Griffin dismissed the abuse associated with that instance as verbal rather than physical abuse. (Tr. 9.)  Ms. Griffin testified that in 2005, she obtained a protection order because she was "tired" in her marriage and perhaps because of where she "was in her mind state." (Tr. 9.)  She testified that the January 2, 2006, terroristic threat conviction arose when Ms. Griffin told the Defendant, who was under the influence, that she wanted a divorce. (Tr. 11.)  On April 15, 2006, the Defendant was arrested for violating a protection order taken out by Ms. Griffin. Ms. Griffin first testified that she did not remember what happened that evening.  She then stated that she called police because she was in "her emotional state."  Finally, she said that the Defendant was arrested because the police did not want her husband to drive. (Tr. 12.)  On August 6, 2006, the Defendant was sentenced to 6 months incarceration for the January 2, 2006, terroristic threat conviction, and Ms. Griffin testified that he was released

3

on December 2, 2006. (Tr. 16.) In January of 2007, the Defendant began counseling with his pastor. (Tr. 16.) On May 6, 2007, the Defendant was arrested on charges of disturbing the peace and domestic violence.

Bishop Foster, the Defendant's pastor, testified that he has known the Defendant since 1999. (Tr. 18-19.) Bishop Foster testified that he counseled with the Griffins since they were married. His counseling with the Defendant became more "intensive" in 2003 or 2004. (Tr. 19-20.) He described the primary issues of concern to the Defendant as financial problems, the Defendant's perfectionism, and drug or alcohol use. (Tr. 20-21.) Bishop Foster testified that he has noticed a positive change in Griffin and would continue to work with him. (Tr. 21-22.) Bishop Foster testified that, in his opinion, the Defendant is not a theat. to Ms. Griffin. (Tr. 22.)

The defense also presented evidence by way of proffer. Assistant Federal Public Defender, Jennifer Gilg, proffered that Diane Kvasnicka, if called to testify, would testify as follows. Ms. Kvasnicka is a program specialist at the Department of Health and Human Services. Her department would have a concern with the situation presented by the Defendant's presence if the daycare is operated at the Griffins' home. The department would investigate and seek out police reports regarding the incident that led to the federal charges. However, Ms, Kvasnicka would testify that Ms. Griffin could address the situation in one of two ways: 1) go on inactive status and not care for children in the home; or 2) move the daycare facility offsite. (Tr. 23.)

The government offered an Omaha police report taken from Kendra McNeil, a/k/a Kendra Griffin, regarding the January 2, 2006, incident that led to the federal charges. The report provides:

4

> "On Monday, 2 January '06, at 1243 hours, Officers Hunt, Strominger, Cruz, and Lacoma received a radio call to 6663 Decatur Street regarding a disturbance, man with a gun. Suspect was found to be in violation of a protection order. Suspect has been wearing the flare gun on his waistband according to the victim. Suspect told victim, 'If you think of leaving me, I'll kill you and the children.' Protection order is valid."

(Tr. 34.)

Judge Gossett found Griffin to be a danger to the community and concluded that no condition or set of conditions could assure the safety of the community. (Filing No. 13.)

## DISCUSSION

### *The Bail Reform Act*

The danger prong of the Bail Reform Act of 1984, 18 U.S.C. §§3141-3156, is implicated when a strong probability exists that a person will commit additional crimes if released and there are no conditions of release or combination of conditions that will reasonably assure that future crimes will not be committed and, accordingly, the safety of the community is at risk. 18 U.S.C. § 3142(e). The government bears the burden of showing by clear and convincing evidence that no condition or combination of conditions exists that will reasonably assure the safety of the community. *United States v. Orta,* 760 F.2d 887, 891 (8th Cir. 1985). The factors set out in 18 U.S.C. § 3142(g) that the Court must consider include: the nature and circumstances of the alleged offense, including whether the offense is one of violence or involving a firearm, explosive or destructive device; the weight of the evidence against the defendant; the defendant's history and characteristics, including the person's physical and mental condition, family ties, employment, financial resources, length of time in the community and community ties,

5

history of substance abuse, and criminal history; and the "nature and seriousness of the danger to any person or the community" if the defendant were released.  *See United States v. Orta,* 760 F.2d 887, 891 (8th Cir. 1985).

### *Application to Griffin's Case*

In the motion to reconsider, the Defendant proposed placement at William's Prepared Place.  In denying the motion, Judge Gossett reasoned that the proposal does not address factors such as Griffin's criminal history.

Pursuant to NECrimR 46.2(c), this Court has conducted a de novo review of this matter.  The Court has reviewed the record in this case, including the Pretrial Services Report and the transcript of the hearing held before Judge Gossett on August 1, 2007.

After a thorough review of this matter, this Court is concerned with the following: Griffin's steady criminal history beginning in 1984 that includes five felonies and a 2006 conviction for terroristic threats; the nature and circumstances of the charged offense that included a terroristic threat and a firearm and/or explosive device; the Defendant's untreated mental condition and lack of adherence to his medication plan; his recent lack of significant employment; his lack of financial resources; his lack of significant community ties other than his wife (a target of domestic abuse) and his child; his past conduct as shown through his criminal history and the hearing testimony; and his history of drug and alcohol abuse, noting that drug and/or alcohol use is related to his criminal conduct.

The Court notes the conflicting evidence with respect to Griffins's drug and alcohol use.  The Court finds much of Ms. Griffin's testimony unreliable, as she testified inconsistently in some instances and in every instance was either unable to remember, or diminished, the details of her husband's conduct such as the threat against her life and the

6

life of her children. The Court notes that the May 6, 2007, contact with law enforcement relating to a domestic violence incident occurred after the Defendant's involvement in counseling that Ms. Griffin and Bishop Foster stated had strongly and positively affected Griffin. Moreover, Griffin has been counseling since 1999 with Bishop Foster, and his criminal activity since 1999 has continued to be significant. The Court does not find Bishop Foster's testimony credible, because his opinions are rebutted by the details of Griffin's criminal history.

## CONCLUSION

This Court affirms Judge Gossett's order denying the Defendant's motion for reconsideration without a hearing, and further finds that the Defendant is a danger to the community and that no conditions of release or combination of conditions will reasonably assure the safety of the community.

IT IS ORDERED:

1.   The Defendant's Appeal of the Magistrate Judge's order denying the Defendant's motion to reconsider (Filing No. 21) is denied; and

2.   The Magistrate Judge's order denying the Defendant's motion to reconsider its previous detention order without a hearing (Filing No. 20) is affirmed.

DATED this 19th day of September, 2007.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge