**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **8:07CR186** |
| **vs.** | ) | |
| | ) | **REPORT AND** |
| **ANTHONY H. GRIFFIN,** | ) | **RECOMMENDATION** |
| | ) | |
| **Defendant.** | ) | |

This matter is before the court on the defendant's Motion to Dismiss Indictment [26]. The motion was heard on September 20, 2007, and deemed submitted as of that date.[1]

The defendant is charged with one count of knowingly possessing an unregistered weapon/firearm, "to-wit: a weapon made from a flare gun with a modified 12-gauge flare cartridge, modified by attaching spherical properties (BBs), said firearm requiring registration pursuant to 26 U.S.C. § 5845(e) and not registered to him in the National Firearms Registration and Transfer Records," in violation of 26 U.S.C. §§ 5841, 5861(d) and 5871.

Defendant contends the indictment should be dismissed because (1) § 5845(e) is unconstitutionally vague; (2) the government's evidence, even accepted as true, cannot establish that the modified flare gun in question constitutes a "firearm" under § 5845(e); (3) defendant's fifth amendment rights were violated due to unjustified pre-indictment delay; and (4) dismissal is warranted under Fed. R. Civ. P. 48(b).

As discussed below, the court recommends that this motion be denied.

---

[1]The hearing was not transcribed; however, the audio file of the hearing was filed at [34].

## FACTUAL BACKGROUND

On January 2, 2006, Anthony Griffin, subsequent to a domestic dispute, was found in possession of an Orion brand flare pistol. The Omaha Police Department discovered the flare pistol was loaded with a round.  The round found in the flare pistol had been modified by the gluing of copper-colored "BBs" to the front of the flare round.

On January 18, 2006, a special agent with the Bureau of Alcohol, Tobacco and Firearms (ATF) obtained the evidence from the Omaha Police Department.  On February 21, 2006, the evidence was transferred to ATF Special Agent Tully Kessler.

On April 7, 2006, Agent Kessler began to process the evidence.  He cut the base off the shell just above the brass and found a small amount of powder.  The primer appeared to be standard shotgun primer.  Agent Kessler cut the top end of the shell, finding seven copper-colored BBs that were held in place with glue.

A sample of the powder was received by the ATF laboratory on April 13, 2006 and, by report dated May 8, 2006, was identified as a sodium nitrate explosive mixture. (Ex. 2).  The cartridge and flare gun were submitted to ATF for further testing, and a technical examination was conducted on October 25, 2006.

On November 1, 2006, ATF's Firearms Technology Branch issued its report (Ex. 101) of the technical examination.  The report reflects the examiner's findings that the flare cartridge was assembled by Orion Safety Products in Peru, Indiana. The cartridge had been modified by attaching seven spherical projectiles which appeared to be .177 caliber BBs. The projectiles were attached by magnet, consistent with the properties of copper coated steel BBs.  The projectiles were attached to the forward end of the cartridge by the use of glue or epoxy.

-2-

The November 1, 2006 report concluded that

- the modified Orion 12 gauge flare cartridge, consisting of the cartridge case, primer, projectiles, and propellant powder, was "ammunition" as defined in 18 U.S.C. § 921(a)(17)(A);

- the Orion 12 Gauge flare launcher, when possessed with the modified cartridge, was capable of expelling projectiles by the action of an explosive, and is a "firearm" as defined in 18 U.S.C. § 921(a)(3); and

- The flare launcher, when possessed with the modified cartridge, was a weapon capable of being concealed on the person from which a shot can be discharged through the energy of an explosive, and is an "any other weapon" as defined in 26 U.S.C. § 5845(e).

Exhibit 101.

ATF Agent Paul White testified that he became the case agent in this matter in March or April 2007. Agent White prepared a chronology of ATF's investigation of this case, Exhibit 3, which was received without objection and provides the following information:

| | |
|---|---|
| 01/02/2006 | Griffin arrested |
| 01/18/2006 | ATF contacted, S/A Taylor takes evidence into ATF custody |
| 02/21/2006 | Case assigned to S/A Kessler |
| 04/07/2006 | S/A Kessler opens case and examines evidence, sends powder sample to lab. Rest of evidence to include ammo and gun placed into evidence vault |
| 04/13/2006 | Powder sample received at lab (Arson and Explosive Branch) |
| 05/08/2006 | Testing of powder at lab completed. Report of lab examination completed of powder from Arson and Explosive Branch. |
| 09/15/2006 | S/A Kessler took gun and ammo out of vault and forwarded items to Firearms Technology Branch for examination and classification of same. |
| 09/18/2006 | Gun and ammo received by FTB |
| 11/01/2006 | Lab examination and classification completed on gun and ammo by FTB |
| 11/28/2006 | Gun and ammo received by Omaha ATF office and placed back into evidence vault |
| 12/01/2006 | S/A Kessler sends request to obtain Certified Copies of Felony Convictions on Griffin to Cook Co. Illinois |
| 01/04/2007 | S/A Kessler calls to check on status of conviction documents, no results as of yet. |

| | |
|---|---|
| 01/11/2007 | S/A Kessler conducts follow up on status of conviction documents, they (Cook Co. Illinois) indicate it is an old case and taking awhile. |
| 01/16/2007 | S/A Kessler conducts follow up on status of documents, they instruct him to resend the request, and S/A Kessler does so. |
| 02/08/2007 | S/A Kessler conducts follow up again and again is instructed to resubmit a request for documents; S/A Kessler does so. |
| 02/21/2007 | S/A Kessler received certified copies of Griffin's felony convictions out of Cook Co., Illinois. |
| 03/19/2007 | S/A Kessler submitted fingerprints of Griffin from Cook Co. convictions in Illinois for comparison with Griffin's fingerprints from the OPD arrest on 1/2/2006 for positive identity on Griffin. |
| 04/01/2007 | Receives fingerprint comparison as being Griffin's, case submitted to supervisor for approval.  Case forwarded to AUSA for prosecution.  Case reassigned to S/A White. |
| 05/21/2007 | Grand Jury held on case and indictment received on Griffin. |
| 05/29/2007 | Warrant on Griffin received by ATF office and Griffin placed into NCIC as wanted person. |
| 07/25/2007 | Griffin arrested on warrant. |

## LEGAL ANALYSIS

### 1.  Whether 26 U.S.C. § 5845(e) Is Void for Vagueness

In *United States v. Bamberg*, 478 F.3d 934, 937 (8th Cir. 2007), the Court of Appeals reaffirmed the principle that

> An overly vague statute "violates the first essential of due process of law," because citizens "must necessarily guess at its meaning and differ as to its application". *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926).  There is a two-part test to determine whether a statute is void for vagueness.  The statute, first, must provide adequate notice of the proscribed conduct, and second, not lend itself to arbitrary enforcement. *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).

(Parallel citations omitted).

The National Firearms Act, 26 U.S.C. 5801, *et seq.*, requires the registration of "firearms" by manufacturers, importers and makers thereof.  26 U.S.C. § 5841.  Under 26 U.S.C. § 5861(d), it is unlawful for any person "to receive or possess a firearm which is not registered to him in the

National Firearms Registration and Transfer Record." The violation of these provisions is punishable by a fine of not more than $10,000, or imprisonment not more than 10 years, or both. 26 U.S.C. § 5871.

> The term "firearm" is defined at 26 U.S.C. § 5845(a) as
>
> (1) a shotgun having a barrel or barrels of less than 18 inches in length; (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length; (3) a rifle having a barrel or barrels of less than 16 inches in length; (4) a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length; **(5) any other weapon, as defined in subsection (e)**; (6) a machinegun; (7) any silencer (as defined in section 921 of title 18, United States Code); and (8) a destructive device....

(Emphasis added). "Any other weapon" means:

> any weapon or device capable of being concealed on the person from which a shot can be discharged through the energy of an explosive, a pistol or revolver having a barrel with a smooth bore designed or redesigned to fire a fixed shotgun shell, weapons with combination shotgun and rifle barrels 12 inches or more, less than 18 inches in length, from which only a single discharge can be made from either barrel without manual reloading, and shall include any such weapon which may be readily restored to fire....

26 U.S.C. § 5845(e). Finally, under 18 U.S.C. 921(a)(17)(A), the term "ammunition" means "ammunition or cartridge cases, primers, bullets, or propellent powder designed for use in any firearm."

Vagueness challenges that do not involve First Amendment issues are analyzed as applied to the specific facts of the case at hand. *See United States v. Lim*, 444 F.3d 910, 915 (7th Cir. 2006). "A criminal statute must provide notice of the prohibited conduct to 'a reasonable degree of certainty,' but 'the practical necessities of discharging the business of government inevitably limit

the specificity with which legislators can spell out prohibitions.'" *Id.* (quoting *Boyce Motor Lines v. United States*, 342 U.S. 337, 340 (1952)).

In this case, § 5845(e) provides fair notice that it is necessary to register "any weapon or device capable of being concealed on the person from which a shot can be discharged through the energy of an explosive." The device at issue in this case is the combination of a flare gun with ammunition modified to contain projectiles (BBs) to be propelled by an explosive. As the government observes, the modifications did not further the function of the flare gun as a signaling device. Rather, the modifications turned the signaling device into a device capable of being concealed on the person from which BBs could be discharged through the energy of a sodium nitrate explosive mixture. Indeed, in *United States v. Coston*, 469 F.2d 1153 (4th Cir. 1972), the court held that a flare gun which the defendant loaded with a shotgun shell was a "firearm" within the meaning of the National Firearms Act: "The weapon, which had a length of 5 ⅜ inches and a smooth bore, proved capable of being used as a shotgun when test-fired. These physical characteristics and firing capability made the weapon a firearm within the meaning of 26 U.S.C. § 5845."

Nor does the court find persuasive the defendant's argument that the statutory provision lends itself to arbitrary enforcement. Apparently, this argument is based on ATF's decision to conduct further investigation after verifying that the cartridge had been modified by the addition of BBs and explosive powder. The record does not suggest that this decision was arbitrarily made.

Considering the specific facts of this case, the court finds that 26 U.S.C. § 5845(e) is not void for vagueness.

### 2. Establishing a Violation

Defendant further contends the indictment must be dismissed because ATF dismantled the flare gun and cartridge without test-firing the device. Thus, he argues, there is no proof that the device is one "from which a shot can be discharged through the energy of an explosive."

Agent White testified, credibly, that it would have been unsafe for the examiners to actually fire the device. It occurs to the court that the government would be able to prove the elements of this offense by means other than actually firing the device itself.

### 3. Pre-indictment Delay

Statutes of limitation provide the primary guarantee against prosecution of a defendant on overly stale charges; however the due process clause plays a limited role in protecting against oppressive delay. *See United States v. Brockman*, 183 F.3d 891, 895 (8th Cir. 1999). Delay in seeking an indictment is sufficiently oppressive to warrant dismissal of the indictment if the delay was unreasonable and is substantially prejudicial to the defendant in the presentation of his case. *See Brockman*, 183 F.3d at 891; *United States v. Johnson*, 28 F.3d 1487, 1492 (8th Cir. 1994), *cert. denied*, 513 U.S. 1098 & 1195 (1995). The defendant bears the burden of proving actual and substantial prejudice attributable to the pre-indictment delay. *Brockman*, 183 F.3d at 891; *Johnson*, 28 F.3d at 1493. "Substantial prejudice cannot be established with the mere 'possibility of prejudice inherent in any extended delay: that memories will dim, witnesses will become inaccessible, and evidence will be lost.'" Johnson, 28 F.3d at 1493. It is also the defendant's burden to show that the lost testimony or information is not available through another source. *Id.*

Here, the defendant speculates that had he been indicted earlier, his attorneys may have prevented the destruction of the flare gun and cartridge by ATF. Since the device was dismantled during the investigation, it is now impossible for the defendant to test-fire it himself.

It was necessary for the government to submit the items in question to ATF for forensic examination. Based on the testimony of Agent White and the data summarized in Exhibit 3, the court finds that the delay between defendant's arrest on January 2, 2006 and his indictment on May 21, 2007 was not unreasonable, in that ATF took the steps necessary to conduct its investigation in a timely manner. The defendant can show no tactical advantage to the government resulting from this delay. Again, this case must be presented – by both parties – through means other than actually firing the device itself.

The court finds that the defendant has not proven actual and substantial prejudice attributable to the pre-indictment delay.

### 4.  Rule 48(b)

Under Rule 48(b) of the Federal Rules of Criminal Procedure, the court may dismiss an indictment if unnecessary delay occurs in presenting a charge to the grand jury or bringing the defendant to trial. The court finds that unnecessary delay has not occurred in this instance and declines to recommend dismissal of the indictment pursuant to Rule 48(b).

### RECOMMENDATION

**IT IS RECOMMENDED** that the defendant's Motion to Dismiss Indictment [26] be denied.

Pursuant to NECrimR 57.3, a party may object to this Report and Recommendation by filing an "Objection to Report and Recommendation" within ten (10) business days after being served with the recommendation. The statement of objection shall specify those portions of the recommendation to which the party objects and the basis of the objection. The objecting party shall file

contemporaneously with the statement of objection a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.

**DATED October 22, 2007.**

         **BY THE COURT:**

         **s/ F.A. Gossett**
         **United States Magistrate Judge**